Kimberly A. MUELLER and Shelby L. Mueller, Plaintiffs/Appellants,

v.

Daniel J. BAUER, M.D. and St. Louis County Internal Medicine, Inc., Defendants/Respondents.

No. ED 78504.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 17, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 6, 2001.

Thomas C. DeVoto, St. Louis, MO, for appellants.

Peter F. Spataro, Robyn G. Fox, Catherine M. Vale, Michael J. Smith, Moser and Marsalek, P.C., St. Louis, MO, for respondents.

KATHIANNE KNAUP CRANE, Judge.

Plaintiffs, the surviving spouse and daughter of a deceased patient, filed this medical malpractice action against defendants, a physician and his employer, alleging that defendants' negligence in prescribing an antiarrhythmic drug caused patient's death. Defendants moved for summary judgment on the ground that plaintiffs' expert could not establish the cause of death with the requisite degree of certainty. Plaintiffs appeal from the entry of summary judgment in defendants' favor. They assert that the trial court erred in finding that there was no genuine issue as to causation, and further erred in refusing to consider evidence filed after the summary judgment hearing. We affirm.

Kimberly A. Mueller, the surviving spouse of Dale E. Mueller (patient), and Shelby L. Mueller, patient's daughter, filed a lawsuit to recover damages from defendants, Daniel J. Bauer, M.D. and St. Louis County Internal Medicine, Inc., alleging that defendants were negligent in various respects in prescribing an antiarrhythmic drug, Atenolol, for patient. Specifically, they alleged:

(a) They failed to obtain an informed consent from Plaintiffs' decedent upon prescription of Atenolol.

(b) They failed to warn him about possible side effects, such as low pulse rate.

(c) They failed to perform appropriate pre-prescription testing to determine the need for antiarrythmias in the absence of clear underlying left ventricular dysfunction.

(d) Defendants failed to withdraw Plaintiffs' decedent from the Atenolol after he had reported low pulse rates and multiple complaints or side effects from the medication.

(e) Defendants prescribed unnecessary medication.

(f) Defendants failed to refer Plaintiffs' decedent to a cardiologist for work-up and follow-up prior to the prescription of the antiarrythmias (Atenolol).

Defendants moved for summary judgment. In their motion they alleged that, although plaintiffs' sole identified expert witness, Mark A. Levinson, M.D., testified in his deposition that he felt that patient died because his heart stopped beating due to profound bradycardia, Dr. Levinson did not have the requisite degree of certainty about the cause of death because he admitted that he could not say with reasonable probability what caused patient's death; that it would be speculation that patient went into profound bradycardia leading to asystole and death; that patient had a preexisting condition of mitral valve prolapse with a history of premature contractions; and that ventricular fibrillation leading to asystole and death also was a possible cause of patient's death, and it would be speculative to assign either cause of death in this case. They attached exhibits to their motion, including Dr. Levinson's deposition and plaintiffs' answers to interrogatories.

In response to the motion, plaintiffs admitted that Dr. Levinson testified as alleged but referred to other portions of Dr. Levinson's testimony that he had to speculate because he had no documentation. Specifically, they referred to Dr. Levinson's answers contained in the following deposition excerpts:

Q. Well, doesn't it? Does it matter as far as our purpose here today to know whether a beta blocker was contributory or whether his mitral valve prolapse condition and any arrhythmic condition associated with that was the cause?

A. Well, you know, I cannot say definitively that one or the other because I don't have any documentation.

Q. Okay. What was the purpose of you copying this article from the American Heart Journal?

A. Well, it was to familiarize myself with something that I already knew about the potential causes of sudden death in this syndrome. Because it's always been speculated but has never really been definitively proved that these people die of either a tachycardia or tachyarrhymia or a bradyarrhythmia. I think that is still speculation.

Plaintiffs also cited Dr. Levinson's testimony that it was a possibility that he would have followed patient with a Holter monitor. In their response plaintiffs also referred to depositions of defendants' experts, "Dr. Daniels" and "Dr. Smith," and "reserved the right" to file those depositions at oral argument. They attached an unexecuted copy of a purported affidavit of Dr. Levinson.

After the trial court entered summary judgment in defendant's favor, plaintiffs filed a motion for rehearing to which they attached an executed copy of Dr. Levinson's affidavit and excerpts from depositions of Joseph M. Smith, M.D. and John S. Daniels, M.D., defendants' experts. The trial court denied the motion for rehearing and denied plaintiffs' attempt to file additional materials after the entry of summary judgment.

A movant is entitled to summary judgment if the motion for summary judgment and the response thereto show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3). A "defending party" may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 381 (Mo. banc 1993).

The criteria on appeal for testing the propriety of summary judgment are no different from those that the trial court employs initially to determine the propriety of sustaining the motion. *Id.* at 376. Because the trial court's judgment is founded on the record submitted and the law, we do not defer to the trial court's order granting summary judgment, but review is de novo. *Id.*

■ We take as true the facts set forth by affidavit or otherwise in support of the motion unless they are contradicted by the response to the summary judgment motion. *Id.; Trotter's Corp. v. Ringleader Restaurants, Inc.,* 929 S.W.2d 935, 938 (Mo.App.1996). We view the record in the light most favorable to the non-prevailing party, giving the non-movant the benefit of all reasonable inferences from the record. *ITT Commercial Finance,* 854 S.W.2d at 376.

Plaintiffs argue that the trial court erred in determining that the evidence in the record could not establish causation. Accordingly, we must determine if defendants made a prima facie case for summary judgment.

■ Three elements must be established to make a prima facie case of medical malpractice: (1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) the act or omission caused the plaintiff's injury. *Brickey v. Concerned Care of the Midwest, Inc.,* 988 S.W.2d 592, 596 (Mo.App.1999). Defendants argue that they established a right to judgment because plaintiffs were not able to produce evidence sufficient to allow the trier of fact to find the existence of a causal connection between an act or omission of defendants and patient's death.

■ Plaintiffs must allege and offer facts that would support finding a causal connection between defendants' actions and the patient's death. *Id.* A defendant's conduct is a cause of the event if the event would not have occurred "but for" that conduct. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 860–61 (Mo. banc 1993) (W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS section 41, at 266 (W. PAGE KEETON, ed., 5th ed.1984)). "But for" causation tests for causation in fact. *Callahan,* 863 S.W.2d at 861. In wrongful death actions, plaintiffs must establish that, but for defendant's actions or inactions, the patient would not have died. *Baker v. Guzon,* 950 S.W.2d 635, 644 (Mo. App.1997). Expert testimony is required to establish causation in a medical malpractice case where proof of causation requires a certain degree of expertise. *Brickey,* 988 S.W.2d at 596–97.

■ If the death may have resulted from either of two causes, for one of which the defendant would be liable and for the other the defendant would not be liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the death. *Silberstein v. Berwald,* 460 S.W.2d 707, 709

(Mo.1970). When a party relies on expert testimony to provide evidence of causation when there are two or more possible causes, that testimony must be given to a reasonable degree of medical certainty. *Baker,* 950 S.W.2d at 646 (quoting *Tompkins v. Cervantes,* 917 S.W.2d 186, 189 (Mo.App.1996)). "When an expert merely testifies that a given action or failure to act 'might' or 'could have' yielded a given result, though other causes are possible, such testimony is devoid of evidentiary value." *Baker,* 950 S.W.2d at 646 (citing *Bertram v. Wunning,* 385 S.W.2d 803, 807 (Mo.App.1965)).

■ Defendant made a prima facie case that plaintiffs could not establish the element of causation. Plaintiffs' only identified expert, who testified on the issues of standard of care and causation, testified that he was unable to determine the cause of patient's death with reasonable probability and that it was a matter of speculation whether patient's death was caused by the antiarrhythmic drug or by a preexisting condition. Where an expert's testimony is mere conjecture and speculation, it does not constitute substantive, probative evidence on which a jury could find ultimate facts and liability. *Gaddy v. Skelly Oil Co.,* 364 Mo. 143, 259 S.W.2d 844, 853 (1953).

■ Once the movant has met the burden imposed by Rule 74.04(c) for establishing a prima facie case for summary judgment, the burden then shifts to the non-movant to show that the movant was not entitled to summary judgment as a matter of law. *ITT Commercial Finance,* 854 S.W.2d at 381. If the burden shifts, the non-movant must then "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* Rule 74.04(c)(2) requires:

The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs, shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits.

Rule 74.04(c)(2). A response is required to set forth the specific facts showing that there is a genuine issue for trial. Rule 74.04(e). A "genuine" dispute is a real and substantial one, not one consisting merely of conjecture, theory, and possibilities. *Rice v. Hodapp,* 919 S.W.2d 240, 243 (Mo. banc 1996).

■ Plaintiff's response attempted to bring in additional facts with an unexecuted affidavit and references to excerpts from depositions that were not filed with the court. Dr. Levinson's affidavit, which was attached to plaintiffs' response to the summary judgment motion, was not signed or notarized. It therefore was not competent evidence. "The truth of the facts contained in an affidavit must be sworn to in order for the affidavit to be proper." *Fitzpatrick v. Hoehn,* 746 S.W.2d 652, 655 (Mo.App.1988). The depositions were not filed with the court either as attachments to the response or separately. Plaintiffs argue that it was sufficient merely to refer to the portions of the depositions on which they were relying. We disagree. The non-movant is required to show a genuine dispute "by affidavit, depositions, answers to interrogatories, or admissions *on file.*" *ITT Commercial Finance,* 854 S.W.2d at 381 [emphasis added]. To show the existence of a genuine issue under Rule 74.04 "the record" must contain competent materials that evidence different accounts of essential facts. *Id.* at 382. In order for a deposition to be properly before the trial court on a motion for summary judgment

it must be properly made a part of the record. *Saunders–Thalden v. Thomas Berkeley Consulting Engineer, Inc.,* 825 S.W.2d 385, 387 (Mo.App.1992). Because the depositions were not "on file" or in the record before the motion was ruled on, the deposition excerpts were not before the court on the motion for summary judgment. Neither the affidavit nor the deposition excerpts could be considered on the motion for summary judgment

In the absence of these materials, the only issue raised by the response was Dr. Levinson's testimony that his inability to testify to the cause of death was caused by a lack of documentation. To have probative value, an expert's opinion must be founded upon facts and data and not mere conjecture or speculation. *Gaddy,* 259 S.W.2d at 849; *Missouri Pipeline Co. v. Wilmes,* 898 S.W.2d 682, 687 (Mo. App.1995); *State ex rel. Mo. Highway and Transp. Comm'n v. Modern Tractor & Supply Co.,* 839 S.W.2d 642, 648 (Mo.App. 1992). If an expert witness is called, the facts in evidence, coupled with those available to the witness from the witness's own investigation, must be sufficient to take the expert testimony out of the realm of guesswork. *Hall v. W.L. Brady Investments, Inc.,* 684 S.W.2d 379, 388 (Mo.App.1984). In this case, the lack of documentation rendered the expert's opinion speculative. The lack of documentation is not a reason to admit speculative testimony. Point one is denied.

Plaintiffs argue in their second point that the trial court erred in not considering Dr. Levinson's executed affidavit and excerpted deposition testimony of Drs. Smith and Daniels. Plaintiffs did not supply the excerpts from Drs. Daniels' and Smith's depositions or the executed affidavit until they filed them as exhibits to their Motion for Rehearing, several weeks after the motion for summary judgment was heard and granted. Rule 74.04(c)(2) re-

quires the response to summary judgment and supporting affidavits to be filed "within thirty days after a motion for summary judgment is served." Affidavits and other materials filed after the time allowed by Rule 74.04, and, in particular, after the motion is ruled on, are not timely-filed. *Schwartz v. Custom Printing Co.,* 926 S.W.2d 490, 495 (Mo.App.1996). The executed affidavit filed beyond the time prescribed by Rule 74.04(c) is inadequate and fails to preserve any dispute on a material fact. *Sours v. Pierce,* 908 S.W.2d 863, 865–66 (Mo.App.1995); *Howell v. St. Louis Steel Erection Co.,* 867 S.W.2d 677, 680 (Mo.App.1993).

The trial court did not err in denying plaintiffs' attempt to supplement the record with an executed affidavit and deposition excerpts filed after summary judgment was entered. Point two is denied.

The judgment of the trial court is affirmed.

MARY K. HOFF, C.J. and ROBERT O. SNYDER, SR. J., concur.