Kenneth SUNDERMEYER, Individually and as Personal Representative For Elva Elizabeth Sundermeyer, Deceased, Appellant,

v.

SSM REGIONAL HEALTH SERVICES D/B/A Villa Marie Skilled Nursing Facility, Respondent.

No. SC 89318.

Supreme Court of Missouri, En Banc.

Dec. 16, 2008.

Anthony L. DeWitt, Edward D. Robertson, Jr., Bartimus, Frickleton, Robertson & Gorny, P.C., Jefferson City, MO, for Appellee.

Jeffery T. McPherson, Robert J. Foley, Cynthia A. Petracek, Armstrong Teasdale LLP, St. Louis, Mo, for Respondent.

MARY R. RUSSELL, Judge.

Kenneth Sundermeyer (Son) appeals after the trial court entered judgment against him in his wrongful death suit against SSM Regional Health Services d/b/a Villa Marie Skilled Nursing Facility (Nursing Facility). Jurisdiction is vested in this Court pursuant to Missouri Constitution article V, section 10, as this case was transferred after opinion by the court of appeals.

Because Son presented evidence demonstrating a genuine issue of material fact about whether Nursing Facility's conduct caused his mother's death, this Court reverses the trial court's judgment, and the cause is remanded.

## I. Background

Son admitted his mother (Mother) to Nursing Facility in June 2001. During her stay at Nursing Facility, she was noted to have a number of falls, bruises, and skin tears. Family members photographed Mother's injuries and calculated that she had 26 separate bruises. After approximately 13 months at Nursing Facility, she was admitted to a hospital with a diagnosis of electrolyte disorder, dehydration, and oral thrush. Hospital staff referred her to the Division of Aging for her bruises. She later asked her family never to send her back to Nursing Facility. She entered another long-term care facility after she was discharged from the hospital, and she died there 25 days after she had left Nursing Facility.

Son brought suit against Nursing Facility, alleging that Mother's death resulted from Nursing Facility's negligent care. He alleged that Nursing Facility was negligent in failing to prevent her falls, to provide her proper nutrition and hydration, to adequately monitor her condition, and to adequately supervise its employees.

Nursing Facility moved for summary judgment, asserting that Son had failed to present causation evidence linking its conduct to Mother's death. The trial court granted judgment in Nursing Facility's favor, and this appeal followed.

Son contends that the trial court erred in entering judgment for Nursing Facility because the evidence, when viewed in the light most favorable to his case, shows that there is a genuine issue of material fact about whether Nursing Facility's conduct caused Mother's death.

## II. Standard of Review

Appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* A "genuine issue" that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential

facts, and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376. The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.* at 376–81.

### III. Summary Judgment Was Wrongly Entered

### A. Requirements for Withstanding Summary Judgment

■ Son's case is an action for wrongful death arising from medical negligence.[1] To prevail at trial, he must prove that Nursing Facility failed to meet a required medical standard of care, that its acts or omissions were performed negligently, and that its acts or omissions caused Mother's death. *See Mueller v. Bauer*, 54 S.W.3d 652, 656–57 (Mo.App.2001) (discussing the required elements for establishing a prima facie case of medical malpractice: (1) an act or omission of the defendant failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently; and (3) the act or omission caused the plaintiff's injury; analyzing a challenge to the causation evidence presented in that case). Nursing Facility contends that the trial court properly entered judgment in its favor because Son failed to provide the causation evidence required to support his claim.[2] It argues that he failed to produce evidence from which the trier of fact could find a causal connection between Nursing Facility's acts or omissions and Mother's death.

■ In a medical malpractice case, where proof of causation requires a certain degree of expertise, the plaintiff must present expert testimony to establish causation. *Id.,* 54 S.W.3d at 656. To survive summary judgment on the issue of causation, Son must demonstrate that there are genuine issues of material fact regarding whether Nursing Facility's conduct was both the cause in fact and the proximate, or legal, cause of Mother's death. *See Baker v. Guzon,* 950 S.W.2d 635, 646 (Mo. App.1997).

■■ In wrongful death actions, plaintiffs must establish that, but for the defendant's actions or inactions, the patient would not have died. *Mueller,* 54 S.W.3d at 656; *see Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 862 (Mo. banc 1993) (explaining that "but for" causation is the "absolute minimum for causation because it is merely causation in fact"; stating that "[m]ere logic and common sense dictates that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought"). Also, this Court has discussed that " '[t]wo causes that combine' can constitute 'but for' causation." *Harvey v. Washington,* 95 S.W.3d 93, 96 (Mo. banc 2003) (citing *Callahan,* 863 S.W.2d at 862). *Harvey* explains:

> The general rule is that if a defendant is negligent and his [or her] negligence combines with that of another, or with any other independent, intervening cause, he [or she] is liable, although his

---

1. Because Missouri does not recognize a cause of action for causing the loss of the will to live, this opinion does not address Son's allegations that Nursing Facility's negligent treatment of Mother was so severe that it impacted her spirit and will to live.

2. Nursing Facility's motion for summary judgment did not challenge Son's claims as to the proper standard of care or whether its conduct was negligent. As such, this opinion addresses only the issue of causation.

[or her] negligence was not the sole negligence or the sole proximate cause, and although his [or her] negligence, without such other independent, intervening cause, would not have produced the injury.

95 S.W.3d at 96 (quoting *Carlson v. K-Mart Corp.*, 979 S.W.2d 145, 147 (Mo. banc 1998)). In addition to "but for" causation, legal causation requires some sort of direct connection. *See Baker*, 950 S.W.2d at 646 (noting that a negligence action will not lie, even where the "but for" test is satisfied, if the cause is remote and other, intervening events arise).

In *Callahan*, however, this Court cautioned that a causation analysis should not lose sight of the ultimate issue:

> All of this discussion concerning the semantics of causation is less important in Missouri than in most jurisdictions because under MAI we do not use the terms 1) 'proximate cause,' 2) 'but for causation,' or 3) 'substantial factor' when instructing the jury. We merely instruct the jury that the defendant's conduct must 'directly cause' or 'directly contribute to cause' plaintiff's injury.

863 S.W.2d at 863 (citing *MAI 19.01 [1986 Revision] Verdict Directing Modification—Multiple Causes of Damage* ).

### B. Causation Evidence

Son maintains that he presented the causation evidence required to survive summary judgment through the deposition testimony of his expert medical witness. He argues that his expert's testimony supports a finding that Nursing Facility's challenged conduct directly caused or contributed to cause Mother's death.

The expert's deposition testimony included: "I think that [Mother's] nutritional decline and her emotional and psychological status all contributed to her death." He also testified:

> I think after reviewing the depositions as well as some of the records of [Nursing Facility] . . . it's clear to me that she had been neglected at the least. Certainly from the standpoint of the photographs and the descriptions of the falls she had perhaps been abused from that perspective not just physically but emotionally from the standpoint of having the telephone withdrawn. From the span I believe it was late February early March of 2002 it appeared those instances became more numerous. She had a tremendous weight loss the last month between June and July none of which was really addressed. I think overall her nutritional status suffered and eventually that neglect contributed to her demise.

■ Nursing Facility contends that Son's expert's testimony is insufficient because he stated only that he thought Nursing Facility's conduct *contributed* to Mother's death, which is not proof of "but for" causation. It argues that *Mueller* stands for the proposition that an expert's testimony is devoid of evidentiary value when the expert merely states that an action or omission "might" or "could have" produced a given result and admits that other causes are possible. *See* 54 S.W.3d at 657. Son's expert's testimony, however, is distinguishable from the problem in *Mueller*, where the expert's testimony was challenged as being "mere conjecture and speculation." *See id.* In this case, the expert testimony cannot be defined as "mere speculation" for summary judgment purposes because the expert agreed with Son's counsel's statement that his expert opinions were not speculative, but rather based on review of Mother's medical records, photographs of her injuries, and other deposition testimonies.

Son's expert's testimony also survives criticism that it was not offered to a "rea-

sonable degree of certainty." *See Baker*, 950 S.W.2d at 646 (citing *Wyckoff v. Davis*, 297 S.W.2d 490, 494 (Mo.1957), for the proposition that "[w]hen a party relies on expert testimony to provide evidence as to causation when there are two or more possible causes, that testimony must be given to a reasonable degree of certainty"). The record shows that Son's expert affirmatively answered when counsel asked him whether his testimony was given to "a reasonable degree of medical certainty." For purposes of analyzing the propriety of summary judgment, that affirmative answer is sufficient to support Expert's testimony opining that Nursing Facility's conduct contributed to cause Mother's death.

### IV. Conclusion

Viewing the record in the light most favorable to Son, as required by this Court's standard of review, this Court finds that Son's expert's testimony provided the requisite evidence of causation to withstand summary judgment. As such, the trial court erred in finding that there was not a genuine issue of material fact about whether Nursing Facility's conduct caused Mother's death. The trial court's judgment is reversed, and the cause is remanded.

STITH, C.J., PRICE, TEITELMAN and WOLFF, JJ., and NORTON and PEACE, SP.JJ., concur.
BRECKENRIDGE and FISCHER, JJ., not participating.