GEORGE W. DRAPER III, Judge.
John Templemire (hereinafter, “Tem-plemire”) appeals from a jury verdict entered in favor of W & M Welding, Inc. (hereinafter, “Employer”) on Temple-mire’s claim of retaliatory discharge in violation of section 287.780, RSMo 2000,[1] after Templemire sought workers’ compensation benefits and was discharged from his employment. Templemire raises two claims of instructional error regarding: (1) the proper causation standard an employee must demonstrate to make a prima facie case for retaliatory discharge under this statute and (2) whether an employee is entitled to submit an instruction regarding an employer’s alleged pretextual motive for the employee’s discharge.
This Court holds that to make a submissible case for retaliatory discharge under section 287.780, an employee must demonstrate his or her filing of a workers’ compensation claim was a “contributing factor” to the employer’s discrimination or the employee’s discharge. To the extent the decisions in Hansome v. Northwestern Cooperage Co., 679 S.W.2d 278 (Mo. banc 1984), and Crabtree v. Bugby, 967 S.W.2d 66 (Mo. banc 1998), are inconsistent with this decision, they are overruled. This Court need not reach Templemire’s alternative claim of instructional error regarding pretext. The circuit court’s judgment is reversed, the case is remanded.[2]
Factual and Procedural History
Employer hired Templemire in October 2005 to work as a painter and general laborer whose job duties included driving trucks and washing parts in the wash bay. On January 9, 2006, Templemire was injured in the course and scope of his employment when a large metal beam fell from a forklift and crushed his left foot. Templemire’s injury required surgery and the installation of plating and screws into his foot. Templemire reported the injury to Employer and filed a workers’ compensation claim for which he received benefits.
Approximately three to four weeks following his injury, Templemire was cleared to return to work with certain restrictions. Templemire was instructed to wear a pro *374 tective boot on his injured foot while at work and was prohibited from climbing ladders. The following month, Temple-mire’s physician added a restriction preventing Templemire from driving a vehicle with a clutch. In July 2006, Templemire’s physician ordered that he only perform seated work due to continuing complications from his injury. In September 2006, the seated restriction was lifted, but Tem-plemire’s physician implemented new restrictions, which included restraining him from climbing stairs, pushing, pulling, and standing longer than one hour without a fifteen-minute break.
As a result of these restrictions, Employer placed Templemire on “light duty” when he returned to work even though light duty work was not available when Templemire returned. Employer’s owner, Gary McMullin (hereinafter, “McMullin”), accommodated the restrictions and created a light duty work assignment for Temple-mire by assigning him to be a tool room assistant to Nick Twenter (hereinafter, “Twenter”).
On November 29, 2006, Templemire remained on light duty. McMullin received a request from a customer to have a railing washed and painted for pick up later that afternoon. Templemire testified that when he arrived at work that morning, he did not speak to McMullin. Instead, Twenter informed Templemire that he would need to wash the railing, but that it was not ready. Twenter then assigned him to complete other tasks while the railing was prepared for washing. Temple-mire completed these tasks and returned to the job site. Around 1:50 p.m., Temple-mire went toward the wash bay to wash the railing. Before reaching the wash bay, Templemire stopped to rest his foot, which was infected.
During this break, McMullin confronted Templemire and cursed at him because the railing had not been washed. Templemire tried to explain the railing had just arrived in the wash bay, and he intended to wash the railing as soon as his break was over. After continuing to curse at Templemire, McMullin discharged Templemire effective immediately. Templemire asked McMul-lin if he was sure he wanted to fire him “because [he] was going to go home and call workman’s [sic] comp?” to which McMullin replied, “I don’t give a f— what you do, this is my f — ing place.”
After being terminated, Templemire contacted Liz Gragg (hereinafter, “Gragg”), the insurance adjuster on his workers’ compensation claim. Gragg subsequently contacted McMullin to discuss Templemire’s discharge. Gragg’s notes from her conversation with McMullin reflected that, after Gragg indicated Temple-mire had work restrictions that required him to take a break, McMullin “went on a [tirade] about [Templemire] ‘milking’ his injury and that he can sue him for whatever reason that is what he pays his premiums for and the [attorneys].”
Templemire subsequently filed suit against Employer pursuant to section 287.780 alleging he was discharged in retaliation for filing a workers’ compensation claim. At the trial, McMullin characterized Templemire as a “high maintenance employee” and disputed Templemire’s account of what transpired between them. McMullin testified he placed the railing in the wash bay early in the morning. McMullin directed Templemire to wash the railing immediately and to disregard any other assignments from Twenter or anyone else until the washing was complete. McMullin returned to check on Templemire’s progress two hours later and found the railing unwashed and Tem-plemire taking a break. McMullin testified that Templemire told him that he needed a break for his foot and if McMul- *375 lin did not like it, he could take it up with Templemire’s physician. McMullin advised Templemire that he did not work for Templemire’s physician and discharged Templemire for insubordination.
Templemire presented evidence that McMullin yelled at him due to this injury and referred to other workers who had been injured as “whiners.” Templemire also offered testimony from former employees who were belittled as a result of their injuries and who did not receive work accommodations. One witness testified he was discharged shortly after filing a workers’ compensation claim. Another witness testified that he overheard McMullin yell at Templemire, “[a]ll you do is sit on your a — and draw my money” during the argument that resulted in Tem-plemire’s discharge. Templemire’s immediate discharge was contrary to Employer’s progressive discipline policy, which was submitted into evidence. Templemire presented evidence about another employee who received multiple disciplinary write-ups and had a drug problem but had not been discharged. By contrast, after returning to work, Templemire received his only disciplinary write-up for failing to wear a paint mask while in the paint booth. Despite this one issue, Templemire was regarded as a good employee who performed his tasks efficiently.
During the jury instruction conference, Templemire argued MAI-23.13,[3] the applicable MAI-approved verdict director, misstated the law insofar as it required a finding that Templemire’s filing of a workers’ compensation claim was the exclusive factor in Employer’s decision to terminate him to prevail on his claim. Templemire offered an alternative instruction stating the jury could find in his favor if the filing of the workers’ compensation claim was a contributing factor to Employer’s decision to discharge him.[4] Alternatively, Temple-mire submitted a pretext instruction, which advised the jury that it could find exclusive causation if it found that Employer’s stated reason for his discharge was a mere pretext, rather than the true reason stated.[5] The circuit court refused both of Templemire’s instructions and advised the jury it had to find the filing of a workers’ compensation claim was the exclusive factor considered by Employer when it terminated Templemire for him to prevail on his claim. The jury returned a verdict in Employer’s favor. After an opinion by the court of appeals, this Court granted transfer.[6] Mo. Const, art. V, sec. 10.
*376 Standard of Review
Whether a jury was instructed properly is a question of law that this Court reviews de novo. Edgerton v. Morrison, 280 S.W.3d 62, 65 (Mo. banc 2009). “Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action.” Bach v. Winfieldr-Foley Fire Protection Dist., 257 S.W.3d 605, 608 (Mo. banc 2008).
Generally, “[w]henever Missouri Approved Instructions contains an instruction applicable to the facts of a case, such instruction shall be given to the exclusion of any other instructions on the same subject.” Rule 70.02(b). Rule 70.02 further provides that departure from an applicable MAI constitutes error, with its prejudicial effect to be determined judicially. Rule 70.02(b)-(c). If, however, a particular MAI does not state the substantive law accurately, it should not be given. State v. Celis-Garcia, 344 S.W.3d 150, 158 (Mo. banc 2011).
Section 287.780 Causation Standard
Templemire argues the circuit court erred in refusing his verdict director that modified the applicable MAI by substituting “contributing factor” for the “exclusive cause” language. Templemire claims that submitting the MAI as written misstates the law. Templemire asserts the MAI’s use of the phrase “exclusive cause” is contrary to the plain language of section 287.780 and this Court’s recent decisions construing the Missouri Human Rights Act (“the MHRA”) and public policy wrongful termination claims, which both hold liability attaches if the employer’s prohibited motive was a “contributing factor” in the employee’s subsequent discharge.
Generally, an employer can discharge an at-will employee for any reason. Keveney v. Missouri Military Acad., 304 S.W.3d 98, 101 (Mo. banc 2010). There are exceptions and limits, however, to the at-will employment doctrine. For example, an employer cannot terminate an at-will employee for being a member of a protected class based on “race, color, religion, national origin, sex, ancestry, age or disability.” Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d 81, 92 (Mo. banc 2010) (quoting section 213.055 of the MHRA). Additionally, this Court has adopted the following public policy exception to the at-will employment doctrine:
An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities .... If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge based on the public-policy exception.
Id. at 92.[7]

Section 287.780’s Historic Construction

Section 287.780 is a statutory exception to the at-will employment doctrine and provides: “No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his [or her] rights under this chapter. Any em *377 ployee who has been discharged or discriminated against shall have a civil action for damages against his [or her] employer.” This section was enacted in 1925 as a part of the original Missouri workers’ compensation law. Christy v. Petrus, 865 Mo. 1187, 295 S.W.2d 122, 124 (Mo.1956). At the time of enactment, the workers’ compensation law was construed liberally in favor of the worker and the award of benefits. Maltz v. Jaekoway-Katz Cap Co., 386 Mo. 1000, 82 S.W.2d 909, 911 (Mo.1934). Section 287.780 was amended in 1973 to provide employees with the private right of action that remains today.
The first case to address the statute after the legislature provided employees with a private cause of action was Mitchell v. St. Louis County, 575 S.W.2d 813 (Mo. App.E.D.1978). In Mitchell, the plaintiff alleged her discharge was discriminatory because it occurred six months after she filed a workers’ compensation claim for a back injury. Id. at 814. The court affirmed the circuit court’s entry of a directed verdict in the employer’s favor after the employer demonstrated the plaintiff was discharged due to excessive absenteeism unrelated to the injury. Id. The court stated, “It is palpable that a cause of action lies only if an employee is discharged discriminatorily by reason of exercising his or her rights” under the workers’ compensation law. Id. at 815. Here, the employer presented evidence of a valid and nonpretextual motive to discharge the plaintiff. Id.
A plaintiffs need to demonstrate a causal connection between his or her exercise of workers’ compensation rights and the subsequent discharge was discussed in Davis v. Richmond Special Road Dist., 649 S.W.2d 252 (Mo.App.W.D.1983). The court explained:
By its wording, section 287.780 is, to the extent of authorizing recovery of damages by a civil action, penal in nature. The statute predicates recovery upon the discharge or discrimination of an employee for the exercise of his or her workers’ compensation rights. By its wording, the statute does not convey an intent that mere discharge of an employee gives rise to a claim against the employer. On the other hand, the statute reveals a legislative intent that there must be a causal relationship between the exercise of the right by the employee and his discharge by his employer arising precisely from the employee’s exercise of his rights, and upon proof that the discharge was related to the employee’s exercise of his or her rights. In its enactment of section 287.780, the General Assembly did not prohibit (although it could have) the discharge of employees merely during the pendency of a claim for workers’ compensation. On the other hand, the General Assembly, by its wording of section 287.780, enacted a prohibition against employers (to the extent they might be liable for damages in a separate civil proceeding) not to discriminate or discharge employees because of the employee’s exercise of his or her rights relative to a workers’ compensation claim. Stated another way, the legislative intent conveyed by the statute is to authorize recovery for damages if, upon proof, it be shown that the employee was discriminated against or discharged simply because of the exercise of his or her rights regarding a workers’ compensation claim.
Id. at 255. (Emphasis added).
For the first time in Hansome v. Northwestern Cooperage Co., this Court set forth the elements a plaintiff must demonstrate to make a submissible case for a claim brought pursuant to section 287.780: “(1) plaintiffs status as employee of defendant before injury, (2) plaintiffs exercise *378 of a right granted by Chapter 287, (3) employer’s discharge of or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiffs, actions and defendant’s actions.” Hansome, 679 S.W.2d at 275. (Emphasis added). This Court did not analyze or interpret the wording of section 287.780; rather, it cited Mitchell and Davis as support for its declaration that the exclusive, causation standard was appropriate for this cause of action. This Court further explained, “Causality does not exist if the basis for discharge is valid and nonpretextual.” Id. at 277, n. 2.
This Court reaffirmed the holding in Hansome in Crabtree v. Bugby. In Crabtree, the employer challenged the verdict director submitted by the discharged employee that directed the jury to return a verdict in her favor if it found “as a direct result of plaintiffs filing of a claim for [workers’] compensation, defendant discharged plaintiff.” Crabtree, 967 S.W.2d at 71. (Emphasis added). This Court found the instruction was erroneous because it permitted the jury to return a verdict for the plaintiff even though the reasons for her discharge included causes other than filing a workers’ compensation claim. Id. This Court held the jury should have been instructed that it had to find the exclusive cause of the plaintiffs discharge was the filing of her claim as articulated in Hansome. Id. This Court explained:
Once this Court by case law has resolved the elements of a cause of action pursuant to section 287.780, neither the trial court nor the court of appeals is free to redefine the elements in every case that comes before them. Mo. Const, art. V, sec. 2. Similarly, this Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court is not a satisfactory basis for violating the doctrine of stare decisis, at least in the absence of a recurring injustice or absurd results.[8]
Id. at 71-72.
The disagreement regarding the statutory analysis was set forth in the dissenting opinion in Crabtree. The dissent stated section 287.780 did not contain any language suggesting that an employee is entitled to relief only when he or she has been discharged “solely” or “exclusively” because the employee sought the protection afforded by workers’ compensation. Id. at 73. The dissent also characterized the holding in Hansome as “an aberration” in which the “exclusive” language “appears to be plucked out of thin air” because neither Mitchell nor Davis used the word “exclusive” to describe the causation standard. Id. at 74.
Hansome and its progeny remained unquestioned until this Court’s recent decision in Fleshner v. Pepose Vision Institute, P.C. In Fleshner, this Court explicitly recognized for the first time the public *379 policy exception to the at-will employment doctrine. Fleshner, 304 S.W.3d at 92. The defendant in Fleshner modeled its jury instruction after the MAI-approved instruction that relied on the Hansome factors to prove a claim of retaliatory discharge and used the exclusive cause language. This Court noted, “Nowhere in the workers’ compensation laws does ‘exclusive causal’ or ‘exclusive causation’ language appear.” Id. The Court acknowledged there was a key distinction between workers’ compensation retaliation cases and public policy exception cases, in that the former arises under the statute, while the latter arises under the common law. Id. at 93. Fleshner found the exclusive causation standard was “inconsistent with the proximate cause standard typically employed in tort cases.” Id. Moreover, this Court found application of the exclusive causation standard would discourage employees from reporting their employers’ violations of the law or for refusing to violate the law. Id. In other words, application of the exclusive causation standard “would result in an exception that fails to accomplish its task of protecting employees who refuse to violate the law or public policy.” Id.

Stare Decisis

Templemire acknowledges the applicable holdings in Hansome and Crabtree but urges this Court to reexamine those cases in light of this Court’s recent criticisms in Fleshner. Templemire argues Hansome and Crabtree should be reversed or modified because they erroneously analyzed section 287.780 and the appropriate causation standard from its inception. Employer and its amici argue that this Court should adhere to the principles of stare decisis and continue to follow the precedent set by Hansome and Crabtree.
“The doctrine of stare decisis promotes security in the law by encouraging adherence to previously decided cases.” Independence-Nat. Educ. Ass’n v. Independence Sch. Dist., 223 S.W.3d 131, 137 (Mo. banc 2007). “But, the adherence to precedent is not absolute, and the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course.” Watts v. Lester E. Cox Medical Centers, 376 S.W.3d 633, 644 (Mo. banc 2012) (quoting Med. Shoppe Intern., Inc. v. Dir. of Revenue, 156 S.W.3d 333, 335 (Mo. banc 2005)). “[W]here it appears that an opinion is clearly erroneous and manifestly wrong, the rule [of] stare decisis is never applied to prevent the repudiation of such a decision.” Southwestern Bell Yellow Pages, Inc. v. Dir. of Revenue, 94 S.W.3d 388, 390-91 (Mo. banc 2002) (quoting Novak v. Kansas City Transit, Inc., 365 S.W.2d 539, 546 (Mo. banc 1963)).
Here, adherence to stare decisis is ill-advised when one carefully examines this Court’s sua sponte creation of the exclusive causation standard articulated in Han-some. Hansome’s reliance on Mitchell and Davis to support an exclusive causation standard is unfounded. Neither Mitchell nor Davis contains any reference whatsoever to a heightened or exclusive causation standard for a plaintiff to prevail on a claim for retaliatory discharge under the workers’ compensation law. Mitchell did not address causation explicitly, while Davis recognized causation was an element of the claim but did not allude to an “exclusive causation” standard by any means. The dissent in Crabtree aptly described the holding in Hansome as “an aberration” in which the “exclusive” language “appears to be plucked out of thin air” with no support in the caselaw or statutory interpretation. As the learned jurist Justice Oliver Wendell Holmes Jr. admonished, “It is revolting to have no better reason for a rule of law than that so *380 it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule, simply persists from blind imitation of the past.” Oliver Wendell Holmes, The Path of the Law, 10 Harv. L.Rev. 457, 469 (1897).[9] Thus, the holdings in Hansome and Crabtree are clearly erroneous and stare decisis should not be applied to' prevent their repudiation.[10]

Legislative Inaction

Employer and its amici assert the legislature had ample opportunity to correct any misstatement by this Court of the exclusive causation standard and chose not to do so, particularly when it substantially revised the workers’ compensation laws in 2005.[11] Templemire argues that legislative inaction is not a factor that trumps other rules of statutory construction, and that section 287.780 has been construed improperly since Hansome.
If this Court rejects a litigant’s pleas to overrule existing caselaw, a party can seek redress with the legislature to implore it to change an incorrect or otherwise undesirable interpretation of a statute. Med. Shoppe, 156 S.W.3d at 334. This Court explained the fallacy of relying upon legislative inaction as tacit approval of an interpretation of a statute:
The General Assembly’s inaction has sometimes been interpreted to be approval of the Court’s reading of a statute. Legislative inaction, however, can just as well mean that the forces arrayed in favor of changing the law are matched by the forces against changing it. In truth, the match does not have to be an even one, for the legislative process in our republican form of government is designed more to prevent the passage of legislation than to encourage it. An incorrect judicial interpretation of a statute may also stand simply be *381 cause the legislature has paid no attention to it. Thus, it is speculative to infer legislative approval from legislative inaction.
Id. at 334-85.
“Workers’ compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible.” Hayes v. Show Me Believers, Inc., 192 S.W.3d 706, 707 (Mo. banc 2006) (quoting Greenlee v. Dukes Plastering Service, 75 S.W.3d 273, 276 (Mo. banc 2002)). “Insight into the legislature’s object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment.” Bachtel v. Miller County Nursing Home Dist., 110 S.W.3d 799, 801 (Mo. banc 2003).
The plain language of section 287.780 prohibits an employer from discharging or in any way discriminating against an employee for exercising his or her workers’ compensation rights. At the time section 287.780 was enacted and when this Court decided Hansome, workers’ compensation laws were to be construed liberally. This Court’s imposition of the exclusive causation standard ran afoul of this statutory imperative. Even if this Court strictly construed the statute as it must do pursuant to section 287.800, “[a] strict construction of a statute presumes nothing that is not expressed.” Robinson v. Hooker, 323 S.W.3d 418, 423 (Mo.App. W.D.2010). “The operation of the statute must be confined to ‘matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter.’ ” Id. (quoting Allcorn v. Tap Enters., Inc., 277 S.W.3d 823, 828 (Mo.App.S.D.2009)). Un-disputedly, section 287.780 does not contain the word “exclusively” or “solely” or “only” to support the exclusive causation standard articulated in Hansome,[12] Further, the legislative dictate is clear that it is inappropriate for an employer to give any consideration to the fact that an employee filed a workers’ compensation claim when making employment decisions.
Moreover, in Reed v. Sale Memorial Hosp. and Clinic, 698 S.W.2d 931, 935 (Mo.App.S.D.1985), the court explained that section 287.780 is an exception to Missouri’s employment at-will doctrine and that the statute declared “public policy” by addressing “the evil to be remedied,” which was “want of an effective remedy for retaliatory discharge arising out of the exercise of rights” under the workers’ corn- *382 pensation law. Id. As it stands today, an employer’s discrimination against or discharge of an employee who exercises his or her rights under section 287.780 is acceptable so long as it is not the exclusive cause of the employer’s action. Thus, the imposition of an exclusive causation standard effectively deprives an employee’s right to remedy the evil of being discriminated against or discharged for exercising workers’ compensation rights.
Hence, the reasoning in Hansome, and the cases it relied on, is flawed. Therefore, to the extent Hansome, Crabtree, and their progeny require a plaintiff to demonstrate his or her exercise of workers’ compensation rights was the exclusive cause of his or her discharge or discrimination, they no longer should be followed.

Appropriate Causation Standard

Because the exclusive causation standard is unsupported by the plain language of section 287.780 and the caselaw relied upon in Hansome and Crabtree, the issue remains what causation standard must a plaintiff demonstrate to make a submissi-ble case for retaliatory discharge under this statute. Templemire and his amici argue this Court should align workers’ compensation discrimination cases with MHRA employment discrimination and public policy exception cases by adopting the “contributing factor” standard. Employer and his amici disagree, urging this Court to adopt a “heightened” or “motivating factor” test to avoid marginally competent employees from filing the pettiest of claims in an effort to avoid a valid termination.
“There is nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion” than causation. Prosser and Keeton on Torts, § 41 at 263 (5th ed.1984). This Court explained the confusion that has permeated tort law due to the different terminology used by the classic Prosser and Keeton treatise and the Restatement (Second) of Torts in Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852 (Mo. banc 1993). “The ‘but for’ causation test provides that ‘the defendant’s conduct is a cause’ of the event if the event would not have occurred ‘but for’ that conduct.” Callahan, 863 S.W.2d at 860-61 (quoting Prosser, § 41 at 266). Prosser uses the term “proximate cause” to encompass all “but for” cases, except for the certain limited exception to the “two fires case” in which each of two or more causes would be sufficient, standing aloné, to cause the plaintiff harm.[13]
By comparison, Restatement section 430 requires a plaintiff to demonstrate the de *383 fendant was the legal cause of his or her harm for liability to attach. Section 431 provides that legal cause is shown when the defendant’s conduct is a “substantial factor” in bringing about the harm. However, section 432 instructs that the defendant’s conduct is not a “substantial factor” unless it meets the “but for” test. Thus, the confusion arises wherein the Restatement labels all cases in which legal cause is present as requiring the “substantial factor” analysis but provides they must meet the “but for” causation test.
This Court recognizes that whether one adheres to the Restatement or Prosser, this historical causation analysis typically pertains to common law tort and negligence actions as opposed to statutory actions. However, as stated in Fleshner, an exclusive causation standard is inconsistent with the proximate cause standard typically employed in tort cases. Fleshner, 304 S.W.3d at 93. Moreover, this Court cautioned that these semantic differences are of little consequence in Missouri because “under the MAI we do not use the terms 1) ‘proximate cause,’ 2) ‘but for causation,’ or 3) ‘substantial factor’ when instructing the jury.” Callahan, 863 S.W.2d at 863. See also Sundermeyer v. SSM Regional Health Services, 271 S.W.3d 552, 555 (Mo. banc 2008). Rather, “[s]uch terms are standards by which the courts determine whether a submissible case has been made and instructing the jury by use of such terms creates the potential for confusion.” Thomas v. McKeever’s Enterprises, Inc., 388 S.W.3d 206, 216 (Mo.App. W.D.2012) (internal citations omitted). “We merely instruct the jury that the defendant’s conduct must ‘directly cause’ or ‘directly contributed to cause’ plaintiff’s injury.” Callahan, 863 S.W.2d at 863 and Sundermeyer, 271 S.W.3d at 555.
In recent years, this Court has addressed what causation standard Missouri plaintiffs must demonstrate to make a sub-missible case for various forms of employment discrimination. In Daugherty v. City of Maryland Heights, 231 S.W.3d 814 (Mo. banc 2007), this Court held a plaintiff must prove his or her protected status under the MHRA was a “contributing factor” to his or her discrimination or discharge to make a submissible case. Daugherty, 231 S.W.3d at 820. This Court made it clear that Missouri’s discrimination safeguards under the MHRA were not identical to the federal standards and could offer greater protection. Id. at 818-19. As such, this Court rejected the application of the burden-shifting analysis that McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), employed in federal discrimination cases, commonly referred to as the “motivating factor” analysis. Further, the plain statutory language of the MHRA did not require a plaintiff to prove that discrimination was a “substantial” or “determining” factor in an employment decision. Id. at 819. The MHRA is clear that if an employer considers age, disability or other protected characteristics when making an employment decision, an employee has made a submissible case for discrimination. Id.
Two years later, this Court reaffirmed the application of the “contributing factor” analysis to the plaintiffs MHRA retaliation claims in Hill v. Ford Motor Co., 277 S.W.3d 659, 665 (Mo. banc 2009), and once again rejected the burden-shifting framework employed under McDonnell Douglas. This Court explained that although claims for discrimination and retaliation under the MHRA were contained in different sections of the act, there was no substantive difference between the claims with respect to causation. Id.
The following year, this Court addressed the appropriate standard a plaintiff must *384 satisfy to prevail on a wrongful discharge claim pursuant to the public policy exception in Fleshner. This Court rejected the exclusive causation standard, as discussed previously, and adopted the “contributing factor” test articulated in Daugherty and Hill. Fleshner, 304 S.W.3d at 94-95. This Court found both the MHRA and the public policy exception modified Missouri’s at-will employment doctrine by instructing that an employer can terminate employees, but its reasoning cannot be improper. Id. at 94. This Court explicitly renounced a heightened standard, stating:
Likewise, cases involving both the MHRA and the public-policy exception turn on whether an illegal factor played a role in the decision to discharge the employee. The evidence in both types of cases directly relates to the employer’s intent or motivation. The employer discharges the employee, asserting a reason for the termination that may or may not be pretextual. Under the MHRA, if race, color, religion, national origin, sex, ancestry, age, or disability of the employee was a “contributing factor” to the discharge, then the employer has violated the MHRA. The employer’s action is no less reprehensible because that factor was not the only reason. Similarly, if an employee reports violations of law or refuses to violate the law or public policy as described herein, it is a “contributing factor” to the discharge, and the discharge is still reprehensible regardless of any other reasons of the employer.
Id. at 94-95.
Taking into account the statutory language and this Court’s precedent in other discrimination cases, this Court holds that the “contributing factor” standard should apply to causes of action that arise pursuant to section 287.780. Adopting the “contributing factor” standard serves two purposes. First, the legislature’s use of the phrase, “in any way,” is consistent with this Court’s analysis of the “contributory factor” language articulated in Daugherty, Hill, and Fleshner. Therefore, application of the “contributory factor” standard fulfills the purpose of the statute, which is to prohibit employers from discharging or in any way discriminating against an employee for exercising his or her rights under chapter 287. Second, the standard now aligns workers’ compensation discrimination with other Missouri employment discrimination laws.
While this Court recognizes a fundamental difference between the purposes of the MHRA and the workers’ compensation laws as a whole, there can be no tolerance for employment discrimination in the workplace, be it based upon protected classes such as gender, race or age, or an employee blowing the whistle on an employer’s illegal practices in violation of public policy, or for exercising workers’ compensation rights. Discrimination against an employee for exercising his or her rights under the workers’ compensation law is just as illegal, insidious, and reprehensible as discrimination under the MHRA or for retaliatory discharge under the public policy exception of the at-will employment doctrine.
Employer and his amici, along with this Court in Crabtree, expressed the concern that abandoning the exclusive causation standard would render the statute a “job security act.” Crabtree stated to find otherwise would permit “an employee who admittedly was fired for tardiness, absenteeism, or incompetence at work [to] still be able to maintain a cause of action for discharge if the worker could persuade a factfinder that, in addition to the other causes, a cause of discharge was the exercise of rights under the workers’ compensation law. Such a rule would encourage *385 marginally competent employees to file the most petty claims in order to enjoy the benefits of heightened job security.” Crabtree, 967 S.W.2d at 72.
This concern was legitimate at the time section 287.780 was amended to include a private cause of action because it was one of only a few statutes that limited the at-will employment doctrine. Since that time, the legislature has seen fit to carve out additional statutory exceptions to the at-will employment doctrine, with the MHRA being one of the most significant, which has demonstrated that these concerns are unwarranted.[14] Prejudice
In addition to demonstrating the circuit court erred in requiring a faulty instruction, Templemire bears the burden of demonstrating he suffered prejudice. Prejudicial error “is an error that materially affected the merits and outcome of the case.” D.R. Sherry Const., Ltd. v. American Family Mut. Ins. Co., 316 S.W.3d 899, 904 (Mo. banc 2010).
Here, Templemire demonstrated he suffered prejudice from the submission of the “exclusive cause” language as opposed to the “contributing factor” language in the verdict director. Templemire presented substantial evidence of Employer’s discrimination against him due to his filing of a workers’ compensation claim that a reasonable trier of fact could determine directly caused or contributed to cause his discharge. There was evidence that McMullin repeatedly yelled at Templemire and complained to others about his injury, characterizing Templemire as a “high maintenance employee” who “s[a]t on his a — and dr[e]w my money.” Other injured workers were belittled for their injuries and described as “whiners,” did not receive accommodations when injured, and one was discharged shortly after filing a workers’ compensation claim. Templemire also presented evidence that his discharge was contrary to Employer’s progressive discipline policy. Finally, Templemire presented evidence of McMullin’s statements to Gragg, the workers’ compensation insurance claims adjuster, that he believed Templemire was “milking his injury” and that Templemire could sue him for whatever reason he wanted because he paid his premiums and attorneys to handle the issues.
By instructing the jury that it had to determine Templemire was discharged exclusively in retaliation for filing a workers’ compensation claim, any evidence of Tem-plemire’s purported insubordination, even in the face of substantial and direct evidence of discrimination, negated Temple-mire’s claim. As stated previously, the statute does not dictate such a standard and the law will not tolerate even a portion of an employer’s motivation to be discriminatory when discharging an employee. Accordingly, Templemire is entitled to a new trial with the submission of a verdict director that instructs the jury that it must determine whether his filing of a workers’ compensation claim was a “contributing factor” to his discharge.
Pretext
Alternatively, Templemire argues that should this Court retain the exclusive causation standard, the circuit court erred in *386 refusing to submit his instruction regarding Employer’s pretextual reason for his discharge. This Court need not resolve whether Templemire was entitled to a pretext instruction given this Court’s holding that the exclusive causation standard should be followed no longer. Templemire raised this claim in the alternative, and his concerns regarding pretext are no longer valid given that a jury now will be instructed to determine whether Templemire’s exercise of his rights under the workers’ compensation law was a contributing factor in Employer’s decision to discharge him.
Conclusion
The circuit court’s judgment is reversed, and the case is remanded.
RUSSELL, C.J., BRECKENRIDGE, STITH and TEITELMAN, JJ., concur.
FISCHER, J., dissents in separate opinion filed.
WILSON, J., concurs in opinion of FISCHER, J.

. All statutory references are to RSMo 2000 unless otherwise indicated.

. This Court transferred this case after an opinion by the Missouri Court of Appeals, Westem District. Portions of the court of appeals opinion are incorporated without further attribution.

. MAI 23.13 has been replaced with MAI 38.04.

. Templemire’s rejected verdict director stated: "On the claim of plaintiff for compensatory damages for retaliatory discharge against defendant, your verdict must be for plaintiff if you believe:
First, plaintiff was employed by defendant, and
Second, plaintiff filed a workers' compensation claim, and
Third, defendant discharged plaintiff, and Fourth, plaintiff's filing of the workers’ compensation claim was a contributing factor in such discharge, and Fifth, as a direct result of such discharge plaintiff sustained damage.”

. Templemire’s rejected pretext instruction stated: "You may find that plaintiff exercising his workers' compensation rights was the exclusive cause of defendant’s decision to discharge plaintiff if the defendant's stated reason for its decision are not the true reasons, but are a pretext to hide retaliation against plaintiff for exercising his workers' compensation rights.”

. The Missouri Association of Trial Attorneys and The St. Louis and Kansas City chapters of the National Employment Lawyers Association filed amicus briefs in support of Temple-mire. The Missouri Chamber of Commerce and Industry and The Missouri Organization of Defense Lawyers filed amicus briefs in support of Employer.

. The legislature has provided statutory protection against discrimination or discharge for other whistle-blowing activities as well. See section 191.908.1 (protection for reporting Medicaid fraud); section 162.068.1 (protection for school employees who report sexual misconduct committed by teachers and other school employees); and section 84.342.1 (protection for municipal police officers).

. Echoing this concern in Crabtree, the dissenting opinion likewise asserts the reason this Court has overruled Hansome and Crab-tree is due solely to a change of heart by the changed membership of the Court, not based upon a legal need. Undoubtedly, the membership of this Court, as well as that of the legislature, has changed dramatically since Hansome was decided in 1984 and Crabtree in 1998. However, today’s decision stems from this Court’s duty to address an appellant's properly raised challenge requesting reexamination of this Court's precedent in light of the current legal landscape. Moreover, reexamination is warranted given the legislature's expansive enactment of a number of statutes that protect Missouri’s citizens from discrimination, most notably passage of the MHRA. Given the legislature’s demonstrated intent that discrimination, based on any number of factors, will not be tolerated in the workplace, it is appropriate for this Court to reevaluate the accuracy of the exclusive causation standard.

. The dissenting opinion cites another learned jurist, Justice Louis Brandéis, for the proposition that "it is more important that the applicable rule of law be settled than that it be settled right.” Staunch adherence to stare decisis based solely on this notion would result in a society in which insidious discrimination still would subject school children to being segregated into schools that were purportedly separate but equal, women could not serve on juries, interracial marriage still would be subject to criminal prosecution, and crime victims would be prohibited from offering impact testimony during the punishment phase of death penalty trials.

. The dissenting opinion accuses this Court of failing to acknowledge that the common law is the exclusive prerogative of the judiciary, for which this Court is the ultimate authority, and that stare decisis is at its strongest in cases of statutory interpretation. This Court did not employ the tenets of statutory construction when it articulated the exclusive causation standard in Hansome or when it reaffirmed the standard in Crabtree. Rather, Hansome merely turned to common law causation principles to fill the causation void in an otherwise silent statute. In doing so, this Court misconstrued the holdings in Mitchell and Davis, which the dissent does not contest. Only now is this Court examining the plain meaning of the statute to determine legislative intent to discern the appropriate causation standard.

.The dissenting opinion asserts that today’s decision encroaches on the legislature’s implicit adoption of the exclusive causation standard given the extensive amendments to the workers’ compensation statutes in 2005 and fears this decision will invite the legislature to do away with the private right of action altogether. The dissent’s fear is speculative at best given the legislature’s enactment of a number of statutes that protect citizens from discrimination since Hansome was decided. It was this Court’s misguided proclamation of the exclusive causation standard in Hansome that effectively eviscerated the legislature’s plain intent to prohibit employers from discriminating "in any way ” against an employee who exercised his or her workers’ compensation rights.

. Compare, Ala.Code § 25-5-11.1 ("No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits....”); Haw.Rev.Stat. § 386-142 ("It shall be unlawful for any employer to suspend or discharge any employee solely because the employee suffers any work injury which is compensable under this chapter and which arises out of and in the course of employment with the employer unless it is shown to the satisfaction of the director that the employee will no longer be capable of performing the employee’s work as a result of the work injury and that employer has no other available work which the employee is capable of performing.”); Md. Code Labor & Emply, § 9-1105 ("An employer may not discharge a covered employee from employment solely because the covered employee files a claim for [workers’] compensation....”); N.M. Stat. Ann. § 52-1-28.2A ("An employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers’ compensation benefits.”); and Va.Code Ann. § 65.2-308A ("No employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title or has testified or is about to testify in any proceeding under this title.").

. "Two fires case” is an illustration used to demonstrate when the application of the "but for” causation test fails to test for causation in fact accurately. The scenario entails two independent tortfeasors who set fires being swept by the wind toward a piece of property, with either fire sufficiently strong, standing alone, to burn down the property. Before either fire reaches the property, they combine and burn the property. If each actor negligently set his or her respective fire, each could claim that he or she is not a factual cause of the harm under the "but for" causation rule because, in the absence of setting one fire, the other fire would have burned the property. Therefore, because both actors could make the same argument, a court that . applied the "but for” causation test effectively would bar the victim from recovery from either of two negligent actors who were obvious factual causes of the damages. "Thus, application of the 'but for’ test "leads to a result that, is almost always condemned as violating both an intuitive sense of causation and good legal policy. Cases like the two fires cases have consequently put the simple but-for test in doubt and courts have in fact modified that test to deal with such cases.” See 1 Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts, § 189 at 631-32 (2d ed.2011).

. Other statutory exceptions to the at-will employment doctrine enacted since 1973 that protect an employee from being discharged or discriminated against for exercising a variety of rights, in addition to those statutory exceptions noted in footnote 7, include: section 494.460.1 (jury service); section 595.209 (responding to a subpoena in a criminal matter); section 288.375.1 (testifying in employment security hearings); and section 115.102.1 (serving as an election judge).