

# SUPREME COURT OF MISSOURI
## en banc

DAVID ROLAND, )
       )
       Respondent/Cross-Appellant, )
       )
v. )
       )
ST. LOUIS CITY BOARD OF )
ELECTION COMMISSIONERS, )
JERRY HUNTER, PAUL MALONEY, )
BENJAMIN PHILLIPS, )
JOSEPH BARBAGLIA, MARILYN JOBE, )
LEO G. STOFF, AND MARY WHEELER- )
JONES, )
       )
       Appellants/Cross-Respondents. )

*Opinion issued December 24, 2019*

No. SC97781

### Appeal from the Circuit Court of the City of St. Louis
### The Honorable Jason Sengheiser, Judge

The St. Louis City Board of Election Commissioners and its members and officers (collectively, the election board) appeal the circuit court's judgment that they violated the sunshine law, section 610.010, et seq.,[1] in refusing to produce absentee ballot applications and ballot envelopes to David Roland. Mr. Roland cross-appeals the circuit court's taxation of costs against him in regard to the election board's defense of his assertion that the election board's violation was purposeful or knowing.

---

[1] All statutory references are to RSMo 2016 unless otherwise stated.

The portion of the circuit court's judgment holding the election board violated the sunshine law because absentee ballot applications and ballot envelopes are open public records is affirmed. The circuit court's taxation of certain court costs against Mr. Roland and in favor of the election board is reversed because the latter was not entitled to costs under either the sunshine law or the general law governing the award of costs.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. Roland represented a candidate taking part in the City of St. Louis' August 2016 primary election. As part of that representation, Mr. Roland made a sunshine law request to the custodian of records for the election board for certain election materials relating to elections held in the City from 2012 through 2016. The election board complied with much of Mr. Roland's request, but its in-house attorney informed Mr. Roland he had advised the election board that the sunshine law did not permit it to grant the portion of Mr. Roland's request seeking absentee ballot applications and ballot envelopes connected to those elections. When Mr. Roland continued to pursue the matter, the election board sought a legal opinion from the Missouri Secretary of State's Office. Its counsel advised that the ballot applications were confidential pursuant to section 115.289 and the ballot envelopes were confidential pursuant to section 115.493; accordingly, both types of records were closed pursuant to section 610.021(14).

Mr. Roland sought a declaratory judgment that the election board violated the sunshine law by refusing to produce the absentee ballot applications and ballot envelopes. He also alleged the claimed violation was knowing or purposeful, thereby entitling him to damages, which could include attorney fees, costs, and civil penalties, in addition to a

2

declaratory judgment of his entitlement to the documents.[2]

The circuit court first tried the issue of whether the election board violated the election laws. It ruled in favor of Mr. Roland, declaring the election board had violated the sunshine law by withholding the absentee ballot applications and ballot envelopes. Subsequently, the election board released those records to Mr. Roland.[3]

The circuit court then addressed Mr. Roland's claim of entitlement to attorney fees, costs and a penalty for this violation of the sunshine law. It found the election board's violation had been neither knowing nor purposeful because it had taken reasonable steps by consulting its in-house counsel and attorneys for the Secretary of State's office, and accepting their advice that Mr. Roland's interpretation of the law was incorrect. The clerk taxed the election board's costs to Mr. Roland in defending against the claim its violation was knowing or purposeful.[4]

---

[2] Because all of the individual defendants were sued in their official capacities only, as certain members of the election board's terms ended, their replacements were substituted as named defendants pursuant to Rule 52.13(d).

[3] Although the circuit court labeled its order a "partial judgment," that order did not finally resolve any claim but rather merely determined certain liability issues and the right to some of the relief sought – a declaratory judgment – but did not resolve whether and what additional remedies might be available if the violation was knowing or purposeful. Accordingly, it was not a final judgment for purposes of appeal. "[A] judgment is a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019); *see also Comm. for Educ. Equal v. State, 878 S.W.2d 446, 451 (Mo. banc 1994)* (dismissing appeal for lack of final judgment, noting "the circuit court did not dispose of all of the remedies sought as to any one claim for relief.")

[4] A minute entry accompanying the circuit court's judgment included the statement "Costs to the Plaintiff." It is unclear on its face whether this notation was intended to mean Mr. Roland would receive his costs because he won his claim that there had been a violation of

3

On appeal, the election board claims the circuit court erred in finding that it violated the sunshine law because, it argues, the ballot applications and envelopes are confidential pursuant to sections 115.289 and 115.299 and, therefore, are closed records under section 610.021(14). Mr. Roland cross-appeals the clerk's billing of costs to him, as he was the prevailing party at trial and the only party to establish a violation of the sunshine law. After an opinion by the Missouri Court of Appeals, Western District, this Court accepted transfer and hears the case as on original appeal. *Mo. Const. art. V, § 10*; *Rule 83.04*.

## II. STANDARD OF REVIEW

"A judgment in a court-tried case will be affirmed if there is substantial evidence to support it, it is not against the weight of the evidence, and it does not erroneously declare or apply the law." *Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc., 279 S.W.3d 179, 184 (Mo. banc 2009)*. "An issue of statutory interpretation is a question of law, not fact." *Laut v. City of Arnold, 491 S.W.3d 191, 196 (Mo. banc 2016)*. Accordingly, the meaning and application of sections 115.289 and 115.299 and their interpretation in *pari materia* with section 610.021 is a question of law for this Court. "It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible." *Spradlin v. City of Fulton, 982 S.W.2d 255, 258 (Mo. banc 1998)*. "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature." *Id.* "The ultimate guide in construing an ambiguous statute is the intent of the legislature." *Id.*

the sunshine law or that Mr. Roland would pay costs, but the record shows the circuit clerk taxed costs against Mr. Roland.

4

Legislative intent with respect to public records is clear. The sunshine law expressly states, "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." *§ 610.011.1*. A public record is defined as "any record, whether written or electronically stored, retained by or of any public governmental body …." *§ 610.010(6)*. To promote the policy of open public records, the sunshine law states its open records provisions "shall be liberally construed" and "exceptions strictly construed." *§ 610.011.1*.

## III.   *ST. LOUIS ABSENTEE BALLOT APPLICATIONS HAVE CEASED BEING PROTECTED FROM DISCLOSURE BY LAW*

The sunshine law protects the public's right of access to public records except, as relevant here, "[r]ecords which are protected from disclosure by law." *§ 610.021(14).* Both parties agree the absentee ballot applications Mr. Roland sought are public records and, therefore, are subject to disclosure unless otherwise protected by law. Section 115.289.1, which applies in most Missouri counties, does not otherwise protect ballot applications from disclosure. Section 115.289.2 does provide some restrictions as to whom may obtain lists of those filing absentee ballot applications, stating in relevant part:

> [A]ll lists of applications for absentee ballots shall be kept confidential to the extent that such lists of applications shall not be posted or displayed in any area open to the general public, nor shall such lists of applications be shown to any person who is not entitled to see such lists of applications … Persons entitled to see such lists shall include a candidate or a duly authorized representative of a campaign committee as defined in section 130.011 or any person with written authorization from a candidate, or any person who has applied for an absentee ballot.

Section 115.289.3, however, provides different and additional protections both for ballot applications and for the list of ballot applications in St. Louis City, St. Louis County,

5

and Jackson County, stating in relevant part:

> *Prior to 8:00 a.m. on the Friday before an election all absentee ballot applications, lists of absentee ballot applications, or any information contained on the absentee ballot applications shall be kept confidential.* Use of the applications, lists, or information contained thereon by the election authority prior to 8:00 a.m. on the Friday before an election for purposes other than processing the absentee ballots shall be deemed a class on election offense. *After 8:00 a.m. on the Friday before an election any person authorized under subsection 4 of this section may copy the list, and the election authority may make copies of the list available to such persons for a reasonable fee determined by the election authority.*

(Emphasis added). Section 115.289.4 authorizes "a candidate or a duly authorized representative of a campaign committee as defined in section 130.011, or any person with written authorization from a candidate, or any person that has applied for an absentee ballot," to access the lists after 8:00 a.m. on the Friday before an election.

Section 115.289.3 thereby makes confidential both the list of absentee ballot applications as well as the applications themselves and information in the applications prior to 8:00 a.m. the Friday before an election. That requirement is not at issue here. The question here is the meaning and effect of the final sentence of section 115.289.3's statement that, after 8:00 a.m. the Friday before an election, "any person authorized under subsection 4 of this section may copy the list …."

The election board argues that by expressly allowing authorized persons to obtain the list of ballot applications after 8:00 a.m. on the Friday before an election while remaining silent as to ballot applications themselves after that time, the legislature necessarily meant the absentee ballot applications and any information applications contain would continue to be confidential after 8:00 a.m. on the Friday before the election. Mr.

6

Roland argues this ignores the fact that section 610.011 makes election materials public records when their protection from disclosure is not otherwise provided by law. Therefore, as section 115.289.3 provides for confidentiality only up to 8:00 a.m. the Friday before the election for applications and their contained information, this is the only period of confidentiality the law provides. He argues once that confidential period concludes, the normal rule making these documents open records again governs. This Court agrees.

Exceptions to the sunshine law must be strictly construed in favor of open records. *§ 610.011.1.* Because the records are open unless specifically protected from disclosure by law, and the only noted protection ends at 8:00 a.m. on the Friday before an election, this Court must construe the words used according to their terms and not imply exceptions not affirmatively expressed in the statute. *Templemire v. W&M Welding, Inc., 433 S.W.3d 371, 381 (Mo. banc 2014).* "Prior to 8:00 a.m. on the Friday before an election" can *only* be construed to mean *prior* to 8:00 a.m. It does not also mean by implication "and after 8:00 a.m. the Friday before an election." By its terms, by giving continued confidentiality only to the list (in certain regards) after 8:00 a.m. the Friday before an election, the statute plainly does not provide further confidentiality after 8:00 a.m. the Friday before an election for documents other than those listed. This means the underlying rules making public records open unless otherwise provided by law apply to all documents other than those listed, including the absentee ballot applications.

The election board argues this interpretation of the statutes is illogical because allowing the absentee ballot applications and information they contain to become open records after 8:00 a.m. on the Friday before an election affords the public access to greater

7

information than that contained on the list, which contains only the names and addresses of absentee voters, yet the list retains some restrictions on disclosure. It argues no real purpose, therefore, is served by protecting ballot application lists in St. Louis City, St. Louis County, and Jackson County if the applications themselves become public. And allowing revelation of the ballot applications themselves raises serious privacy concerns.

But, granting greater protection to lists than to the applications themselves is not peculiar to section 115.289.3 governing ballot applications and lists in St. Louis City, St. Louis County, and Jackson County. It is the same choice the legislature made for other Missouri counties. *See § 610.011; § 115.289.1-2.* The fact that after 8:00 a.m. the Friday before an election lists are subject to limited disclosure and the applications subject to the same general disclosure rules as in the rest of the state just puts residents of St. Louis City, St. Louis County, and Jackson County in a similar position to residents of the rest of the state. This is neither illogical nor irrational.

The election board argues the enactment of special protections for applications and lists in the three largest urban jurisdictions shows there is a greater need for privacy protection for residents of those jurisdictions. But assuming this to be true, how long such greater protections are needed is an issue for determination by the legislature, not this Court. This Court will not second-guess how the legislature struck the delicate balance between the competing interests of privacy and transparency. *State ex rel. Goodman v. St. Louis Bd. of Police Commr's, 181 S.W.3d 156, 158 (Mo. App. 2005).* This Court's obligation is to apply the election statutes and sunshine law as written, not as the election board may believe it could be better written.

8

In sum, the sunshine law provides that public records, which the parties agree include absentee ballot applications, are open records unless otherwise provided by law. This Court is not free to fashion additional exceptions to the sunshine law. *Hyde v. City of Columbia, 637 S.W.2d 251, 263 (Mo. App. 1982)*. No exception applies here after 8:00 a.m. the Friday before an election as to ballot applications and the information they contain. Accordingly, the circuit court did not err in declaring the ballot applications were subject to disclosure.

## IV.  BALLOT ENVELOPES ARE OPEN TO THE PUBLIC AFTER THE VOTED BALLOT IS REMOVED

The parties agree voted ballots are protected from disclosure. *§ 115.493*.[5] They disagree whether the envelopes in which voters place their ballots are protected from disclosure. Mr. Roland emphasizes he is not seeking to inspect ballot envelopes prior to the voted ballot's removal. The only question he raises is whether the ballot envelopes are open records *after* the voted ballots have been removed and counted.

The election board argues the envelopes in which the ballots were placed must continue to be protected from disclosure after an election because section 115.299.4 requires those envelopes to be stored alongside the voted ballots. The relevant portion of section 115.299.4 states:

> To process absentee ballots in envelopes, one member of each team, closely observed by another member of the team from a different political party, shall open each envelope and call the voter's name in a clear voice. Without unfolding the ballot, two team members, one from each major political party,

---

[5] "During the time that voted ballots … are kept by the election authority, it shall not open or inspect them or allow anyone else to do so, except upon order of a legislative body trying an election contest, a court or grand jury."

9

shall initial the ballot, and an election judge shall place the ballot, still folded, in a ballot box. … **After the votes on all ballots assigned to a team have been counted, the ballots and ballot envelopes shall be … enclosed in sealed containers** marked "voted absentee ballots and ballot envelopes from the election held ____, 20___". All rejected absentee ballots and envelopes shall be enclosed and sealed in a separate container marked "rejected absentee ballots and envelopes from the election held ____, 20 ____". …

(Emphasis added). The election board argues this combined storage of the envelopes with the ballots means allowing disclosure of the envelopes could put the privacy of the voted ballots at improper risk.

Even were this Court to agree it might be preferable not to store the envelopes and ballots together when one is an open record and the other a closed record, this is not a decision for this Court to make. The election board has not pointed to any statute that expressly exempts ballot envelopes from sunshine law disclosure after they have been opened and the voted ballots removed.[6] Mere physical proximity of closed public records (the voted ballots) to other public records (the ballot envelopes) does not make the other public records closed by implication. There has been no showing the election board is unable to remove the ballot envelopes from the shared container without also revealing the voted ballots simply because of their shared storage. Any problems with this arrangement can be addressed by the legislature. In the absence of a provision making the envelopes

---

[6] The election board argued below that the ballot envelopes were protected as "processed ballot materials" pursuant to section 115.493. But its points relied on in this Court in relevant part argue only, "§ 115.299 mandates that absentee ballot envelopes be stored in sealed containers along with voted ballots, and allowing public access to such envelopes would contravene the clear intent of the General Assembly." Because the election board chose to no longer pursue its unsuccessful assertion the ballot envelopes are "processed ballot materials," this Court does not further address that issue. *Rule 84.04*.

10

confidential, this Court will not imply an exception to disclosure not enacted by the legislature. *See, e.g., Templemire, 433 S.W.3d at 381.* The circuit court did not err in rejecting the election board's argument in regard to the ballot envelopes.

## V. *COSTS SHOULD NOT HAVE BEEN ASSESSED AGAINST MR. ROLAND*

The election board argues it is entitled to costs it incurred in defending against Mr. Roland's assertion that its violation was knowing or purposeful because it prevailed in that defense. "Costs are a creature of statute, and courts have no inherent power to award costs, which can only be granted by virtue of express statutory authority." *State ex rel. Merrell v. Carter, 518 S.W. 798, 800 (Mo. banc 2017)* (quotations omitted). "Statutes allowing taxation of costs are strictly construed." *Id.*

In support of its claim to costs, the election board relies on section 514.060, which states, "In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, *except in those cases in which a different provision is made by law.*" (Emphasis added).

The sunshine law is just such a case "in which a different provision is made by law." Cost awards, along with attorney fees and civil penalties, are among the available remedies for sunshine law violations under section 610.027. *See, e.g., Laut, 491 S.W.3d at 194.* Section 610.027.3 states, in relevant part:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has knowingly violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. *If the court finds that there is a knowing violation of sections 610.010 to 610.026, the court may order the payment by such*

11

*body or member of all costs and reasonable attorney fees to any party successfully establishing a violation.*

(Emphasis added). Similarly, section 610.027.4 provides a civil penalty and "all costs and reasonable attorney fees" may be awarded against a public body or member "to any party successfully establishing" a purposeful violation.

"[T]he portions of the sunshine law that allow for imposition of a civil penalty and an award of attorney fees and costs are penal in nature and must be strictly construed." *Laut, 491 S.W.3d 196.* As relevant here, the language in the sunshine law limits such an award of costs to a plaintiff, as only a plaintiff (on either a claim, cross-claim, or third-party claim) would be able to "establish a violation" against a public body or member. The defending public body or member is the one defending against the claim of a violation, not the one establishing a violation.

The election board, nonetheless, argues that because subsections 3 and 4 of section 610.027 of the sunshine law do not expressly set forth a special provision for recovery (or non-recovery) of costs by a governmental body or member, the statute should be considered as merely silent rather than conflicting with the general rule set out in section 514.060 that a prevailing governmental party, like other prevailing parties, can obtain its costs.

The election board's premise for this argument is faulty, however. First, when construing statutes, this Court may not "add or subtract words from a statute or ignore the plain meaning of the words that are there." *Dickemann v. Costco Wholesale Corp., 550 S.W.3d 65, 68 n.5 (Mo. banc 2018).* The statute is explicit in stating who can receive costs

12

–only those who are successful in establishing a violation, that is, plaintiffs.  It is also explicit as against whom such costs can be awarded – only the public body.

Second, the sunshine law must be read as a whole, and other sections are not silent as to the right of governmental bodies to costs.  Section 610.027.6 specifically states that, even when the governmental body acts as a plaintiff in bringing a declaratory action to determine for itself the legality of closing a public meeting, record, or vote, it must do so at its own expense – it has no right to costs regardless of whether the court determines the meeting or document is subject to disclosure.  In so providing, the legislature has demonstrated it was aware of the issue of whether a governmental body could obtain costs, and yet chose to provide that only a party successfully establishing a violation could obtain costs.  It clarified that even when acting as a plaintiff in a declaratory judgment action the public body could not obtain costs.  Had the legislature wanted a governmental body to be entitled to an award of costs in other circumstances, it would have said so.[7]

Finally, even under the general costs statute, section 514.060, the election board would have to prove it was a *prevailing* party.  It has not done so.  The election board wrongly treats Mr. Roland's claim that the violation was knowing or purposeful as if it were a separate sunshine law claim on which the election board prevailed.  The election board's state of mind in violating the sunshine law is not a separate violation of the sunshine

---

[7]  *Cf. Union Elec. Co. v. Director of Revenue, State of Mo.,* 799 S.W.2d 78, 79 (Mo. banc 1990) ("Had the legislature intended that interest accrue on the full amount of the overpayment, it would have said so."); *Frye v. Levy,* 440 S.W.3d 405, 412 (Mo. banc 2014) ("If the legislature intended for the grant of investigative authority … to be contingent on compliance with the [statutory] deadlines … it would have said so.").

13

law, however; it simply determines the extent of the circuit court's discretion in remedying an established sunshine law violation. A finding by the circuit court that the violation was knowing or purposeful is a prerequisite to the plaintiff obtaining part of the damages remedy allowed for egregious violations – a civil penalty, attorney fees, and costs. The election board cites to no authority, and this Court is aware of none, entitling a defendant to costs if a plaintiff does not obtain every form of damages or other remedy sought. Indeed, the opposite is true.[8]  The election board was not entitled to costs simply because its sunshine law violation was not as egregious as it might have been.

## VI.    CONCLUSION

For the reasons set forth above, the circuit court's judgment is affirmed in its holding that the election board violated the sunshine law in refusing to produce the ballot applications and envelopes. The judgment of the circuit court is reversed insofar as it awarded costs to the election board in defending against the allegation its violation was knowing or purposeful.

_____

**LAURA DENVIR STITH, JUDGE**

All concur.

_____

[8] *See, e.g., Rental Co., LLC v. Carter Group, Inc., 399 S.W.3d 63, 67 (Mo. App. 2013)* ("The prevailing party is the party that obtains a judgment from the court, regardless of the amount of damages." (quotations omitted)); *State ex. rel. Nixon v. Patriot Tobacco Co., 220 S.W.3d 889, 892 (Mo. App. 2007)* (plaintiff was entitled to award of attorney fees as the prevailing party even though the circuit court "did not grant all of the remedies sought" in a section 196.1003(b)(3) action); *see also Prevailing Party, Black's Law Dictionary at 1298 (10th ed. 2014)* ("A party in whose favor a judgment is rendered regardless of the amount of damages awarded[.]").